NORTHERN INDIANA PUBLIC SERVICE COMPANY, an Indiana corporation, and NIPSCO Industries, Inc., an Indiana corporation, Appellants–Defendants,

v.

Scott A. BOLKA, on behalf of himself and all others similarly situated, Appellee–Plaintiff.

No. 46A04–9708–CV–344.

Court of Appeals of Indiana.

April 8, 1998.

**615**

Paul A. Rake, Sherry L. Clarke, Michael E. O'Neill, Eichhorn & Eichhorn, Hammond, for Appellants-Defendants.

Atley C. Price, Kurt R. Earnst, Braje & Nelson, Michigan City, for Appellee-Plaintiff.

## OPINION

KIRSCH, Judge.

Northern Indiana Public Service Co. and NIPSCO Industries, Inc. (NIPSCO) appeal from the class certification of a cause brought by Scott A. Bolka for damages allegedly caused by emissions from a NIPSCO power generating plant. NIPSCO challenges the trial court's findings that the requirements of Trial Rule 23(A) and (B) were met.

We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

Scott A. Bolka is a boat owner who harbored his boat in Washington Park Marina in Michigan City, Indiana, near Michigan City Generating Station, one of NIPSCO's power generating plants. He claims that the plant produced harmful emissions that damaged his boat and required him to clean it more frequently than would otherwise be necessary. He observed the same types of damages to other boats in the same marina. He sought certification of his action on behalf of all owners of boats harbored in the marina. After a hearing, the trial court issued an order certifying the action. NIPSCO appeals.

## DISCUSSION AND DECISION

Trial Rule 23(A) lists the threshold requirements for certification of a suit as a class action. It provides that a plaintiff may sue as a representative and on behalf of a class if the following four requirements are met: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy.)

Trial Rule 23(B) provides that one of three additional requirements must also be met. Here, the trial court found that the requirements of both Trial Rule 23(B)(1) and (B)(3) were satisfied. Trial Rule 23(B)(1) requires the court to find either that the prosecution of actions by individual class members would create a risk of inconsistent verdicts establishing incompatible standards of conduct, or that adjudication of some claims individually would as a practical matter dispose of the claims of others not a party to the suit. Trial Rule 23(B)(3) requires that the court find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. NIPSCO argues that the trial court improperly certified the class because three of the four Trial Rule 23(A) requirements and Trial Rule 23(B) were not satisfied.

The plaintiff has the burden of establishing that the Trial Rule 23 requirements have been met. *McCart v. Chief Executive Officer in Charge, Independent Federal Credit Union,* 652 N.E.2d 80 (Ind. Ct.App.1995), *trans. denied* (1996). The determination of whether an action is maintainable as a class action is committed to the sound discretion of the trial court. *CSX Trans., Inc. v. Clark,* 646 N.E.2d 1003 (Ind.Ct.App.1995). Thus, a trial court's ruling on class certification is reviewed employing an abuse of discretion standard. *Heritage House of Salem, Inc. v. Bailey,* 652 N.E.2d 69 (Ind.Ct.App.1995), *trans. denied* (1996). If substantial evidence supports the trial court's exercise of discretion, this court will affirm its order. *ConAgra, Inc. v. Farrington,* 635 N.E.2d 1137, 1139 (Ind.Ct.App.1994).

## I. Numerosity under Trial Rule 23(A)(1)

First, NIPSCO argues that Bolka failed to prove that joinder of all potential plaintiffs was impracticable, as required by Trial Rule 23(A)(1). It argues that the only evidence Bolka presented was his complaint, which alleged that the number of potential plaintiffs was in excess of 125, which was "too numerous to allow" them to join the suit as co-plaintiffs, and his own testimony that he had observed at least one hundred boaters engaging in the same type of boat cleaning at the marina. *Record* at 8, 153.

The trial court found that "the vast number of leased slips ... are such that to join all of the said potential class members would be impracticable." *Record* at 110. NIPSCO argues that this conclusion has no evidentiary support and that the court improperly relied upon "common sense assumptions" without stating what those assumptions were. It argues that the identities of those who lease slips are readily available and that accepting Bolka's "inconvenience" and "hardship" arguments was an abuse of discretion. It contends that one hundred plus boaters is a sufficiently discrete number to proceed without class certification.

■ The determination of whether joinder is impracticable is not simply a test of numbers, but requires an examination of the specific facts and circumstances of each case. *McCart*, 652 N.E.2d at 83. Proponents of the class are not required to specify the identities or exact number of persons included in the proposed class, but they may not rely on conclusory allegations that joinder is impracticable or upon speculation as to the size of the class. *Id.* at 83. Instead, they must supply facts or demonstrate circumstances which provide support for a reasonable estimate of the number of class members. *Id.* at 83. A finding of numerosity may be supported by common sense assumptions. *CSX Trans., Inc. v. Clark*, 646 N.E.2d at 1007. Courts interpreting the identical provision of the federal rule have recognized that while numerosity analysis does not rest on a "magic" number, permissive joinder has been deemed impracticable where class members number forty or more. *Chandler v. Southwest Jeep–Eagle, Inc.*, 162 F.R.D.

302 (N.D.Ill.1995). The numerosity inquiry requires the court to consider judicial economy and the ability of the class members to institute individual suits. *Connerwood Healthcare, Inc. v. Estate of Herron*, 683 N.E.2d 1322 (Ind.Ct.App.1997), *trans. denied* (1998).

■ The only evidence presented about the number of potential class members was Bolka's testimony that he observed "hundreds" of boats with damages similar to his own. NIPSCO does not dispute this number. Bolka's testimony was a reasonable estimate of the number of potential class members based on his own direct observation. It was not an abuse of discretion for the trial court, informed by common sense, to conclude that litigating a case involving over one hundred plaintiffs would be impracticable. The fact that the identities of the class members are ascertainable does not negate the availability of the class action as a vehicle to litigate their claims. *See, e.g., Skalbania v. Simmons*, 443 N.E.2d 352 (Ind.Ct.App. 1982).

## II. Commonality under Trial Rule 23(A)(2)

■ NIPSCO also takes issue with the trial court's determination that the commonality requirement of Trial Rule 23(A)(2) was met. The trial court concluded that the same course of conduct, the "consistent spewing of harmful emissions and coal dust," satisfied the commonality test of Trial Rule 23(A)(2). *Record* at 112. Commonality is satisfied by a finding that the plaintiffs' claims derived from a common nucleus of operative fact. *Edward D. Jones & Co. v. Cole*, 643 N.E.2d 402 (Ind.Ct.App.1994), *trans. denied* (1995). A common nucleus of operative fact exists where there is a common course of conduct. *Id.* at 405.

■ NIPSCO contends that no common issue is available for resolution in a manner which would alleviate the need for having separate jury consideration of each claim because it plans to raise defenses that create different questions of fact as to each boater. It will argue that each boater's activity is a proximate cause of his or her own damage in

either "coming to the nuisance" or "incurring the risk" of harboring his boat near the NIPSCO power plant. Thus, legal liability will not be decided solely based on whether there are harmful emissions from NIPSCO's plant, but will depend upon the factual determinations inherent in NIPSCO's defenses. NIPSCO contends that the trial court failed to recognize the need for individual determinations regarding NIPSCO's affirmative defenses. It argues that the trial court's certification order effectively denies NIPSCO its statutory right to make the activities of the boaters part of the consideration for fault and nuisance.

NIPSCO also argues that even if Bolka and other boaters have negligence claims, they are unsuitable for class determination because Indiana's Comparative Fault Act requires the fact finder to determine the relative degree of each plaintiff's fault in causing his damages. This determination will necessarily be unique to each individual. Involved in this analysis will be the unique facts surrounding the history of each boat, i.e., the location of the boat, the amount of exposure, and the type of preventive care and maintenance it received. NIPSCO contends that because these variables would prevent a jury from allocating the same degree of fault among all of the members of the class, there is no common issue of liability.

■ In spite of these potential differences, however, there was one common course of conduct: harmful emissions from NIPSCO's plant which impacted on each of the class members. The fact that each boater may have a different degree of damage does not negate the commonality component. Individual questions do not prevent a class action on the common questions. *Bank One, Indianapolis, N.A. v. Norton*, 557 N.E.2d 1038, 1042 (Ind.Ct.App.1990). As one treatise explains, "even if only one common issue can be identified as appropriate for class action treatment, that is enough to justify the application of the provision as long as the other Rule 23 requirements have been met." 7B Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1790 (2d ed.1986) (footnotes omitted).

Consideration of NIPSCO's available affirmative defenses goes to the merits of the class members' case. Class certification is essentially a procedural order and carries no implication about the merits of the case. *Kuespert v. State*, 378 N.E.2d 888, 177 Ind. App. 142 (1978). In *Bank One*, this court held that the existence of possible defenses is irrelevant to the certification issue. In that case, this court found that class representatives whose own claims may have been time-barred could still represent the class on the issue of liability. Individual questions relating to potential defenses could be resolved later. *Bank One*, 557 N.E.2d at 1040–41. Likewise, in this case, the existence of NIPSCO's potential affirmative defenses is irrelevant to certification. Such defenses do not alter the overall common question of liability based on a common course of conduct.

■ Furthermore, NIPSCO's "coming to the nuisance" defense does not apply to all of the class claims. One of the claims is that the class members suffered damage due to the negligent operation of the power generating plant. The "coming to the nuisance" defense is not available where the damage is due to negligent operation. *See* IC 34–1–52–4(g). In arguing that Bolka has not proven any such negligence, NIPSCO again ignores the fact that Bolka need not prove his claims in order to be entitled to certification. A certification hearing is not intended to be a trial on the merits, and Trial Rule 23 does not require a potential class representative to show a likelihood of success on the merits in order to have his claim certified as a class action. *Rose v. Denman*, 676 N.E.2d 777 (Ind.Ct.App.1997).

Accepting NIPSCO's argument that its affirmative defenses act as a bar to certification would undermine Trial Rule 23, since it would prevent virtually every negligence action from becoming a class action. In any action where comparative fault is at issue, the determination of fault percentages and damages will be unique to each class member. However, where the liability of the defendant is common to all of the class members, a class action is appropriate on that issue. Nothing in the trial court's certification order impairs NIPSCO's ability to

mount a full and vigorous defense, but NIPSCO's use of affirmative defenses as a bar to certification is premature and would require Bolka or any other plaintiff to prove the merits of their case in order to be granted certification. *See also CSX Transportation, Inc. v. Rabold,* 593 N.E.2d 1277 (Ind.Ct.App. 1992), *trans. denied* (certification proper even where a potential bar to recovery existed as to every class member).

NIPSCO's affirmative defenses do not negate the fact that a common issue exists with regard to the class members. The trial court correctly concluded that Trial Rule 23(A)(2) was satisfied.

### III. Adequacy under Trial Rule 23(A)(4)

 NIPSCO next argues that Bolka's action was improperly certified as a class action because Bolka cannot fairly and adequately represent the class. The Trial Rule 23(A)(4) adequacy requirement has three components: 1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; 2) the named representative must have a sufficient interest in the outcome to ensure vigorous advocacy; and 3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. *Connerwood Healthcare,* 683 N.E.2d at 1326, n. 4.

 Focusing on the first component, NIPSCO argues that Bolka's claim makes him an inadequate class representative. It notes that the failure of one or more class representatives to possess the same interest and suffer the same injury as the class as a whole defeats class certification. *Y.A. by Fleener v. Bayh,* 657 N.E.2d 410 (Ind.Ct. App.1995), *trans. denied* (1996). NIPSCO argues, therefore, that if Bolka has no claim, he may not represent the class and his request for certification must be denied. In particular, NIPSCO points to testimony that suggests that Bolka's claim may be barred by the "coming to the nuisance" doctrine: Bolka testified that he had a life-long familiarity with NIPSCO's plant and its activities, that he understood what went on there, and that he continued to maintain his boat at the marina even after he noticed stains that he attributed to emissions from NIPSCO's plant. NIPSCO contends that because Bolka's claim may be statutorily barred, he cannot fairly and adequately protect the interests of the class.

The trial court considered this possibility. Bolka's testimony at the certification hearing established that his claim was not antagonistic to or conflicting with those of the other class members. Bolka has the same interest and suffered the same injuries as the class as a whole; he observed the same kinds of stains and cleaning activities on other boats that he observed on his own boat. The trial court suggested that the class could still be certified and should go forward even if Bolka's claim failed, stating that it was "at liberty to . . . appoint adequate class representative(s) on that issue later." *Record* at 114. This is well within the trial court's power. *See* Ind.Trial Rule 23(D)(2). The availability of potential defenses to NIPSCO against Bolka's claim is not a bar to class certification. Trial Rule 23 contemplates that a representative might have to be replaced, since it provides for the appointment by the trial court of new representatives should such appointment become necessary. Even if NIPSCO's defenses prove to be a bar to recovery for Bolka personally, the trial court can decertify the action for damages or appoint a new representative.

Bolka is a suitable representative of the class; he is a longtime boat owner and has owned boats made of different materials. He has a diverse knowledge of boats and a financial stake in his boat, since he uses it to conduct a charter fishing business. Once the issue of liability is determined, NIPSCO has the right to present its theories of defense which may or may not be applicable to all members, including Bolka. At that time, the court can take action to ensure that the claims of all class members are adequately addressed. Until adjudication is made on the common issue and NIPSCO asserts a defense to Bolka's claim, however, Bolka is an adequate class representative.

### IV. Trial Rule 23(B)

Finally, NIPSCO argues that the trial court erred in finding that Trial Rule 23(B)

has been satisfied.[1] NIPSCO contends that the requirement of Trial Rule 23(B)(1) was not met because there was no evidence that supports a finding that separate actions by individual members of the class would establish incompatible standards of conduct for the party opposing the class. NIPSCO contends that there was no basis for concluding that a finding of non-liability as to one plaintiff would preclude the opposite finding in another case separately tried. It also argues that there was no evidence that individual trials would prejudice other boaters, nor was there any evidence that collateral estoppel would bar the separate claims of other potential plaintiffs.

■ Indiana Trial Rule 23 is based on Federal Rule of Civil Procedure 23. *Hefty v. All Other Members of Certified Settlement Class,* 680 N.E.2d 843 (Ind.1997). Thus, it is appropriate for us to look at interpretations of the federal rule when we apply the Indiana Rule. Under Trial Rule 23(B)(1)(a), there must be an actual risk that separate actions will be brought. *Connerwood Healthcare,* 683 N.E.2d at 1328. The action must pose the serious risk of a "conflicted position" for the party opposing the class. It must be more than a risk that in separate actions, the opposing party would have to pay damages to some class members but not others. *Id.*

A survey of the cases reveals that Trial Rule 23(B)(1)(a) is rarely successfully invoked when the class members seek primarily money damages as their remedy. One commentator noted that the section was drafted to take in cases where the party opposing the class is obligated by law to treat the members of the class alike, such as a utility and its customers, or a government and its taxpayers, and cases where the party must treat all of the class members the same as a practical matter, such as an action to quiet title to water rights. Benjamin Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv.L.Rev. 356 (1967).

Some courts have taken a broader view. In *Hernandez v. Motor Vessel Skyward,* 61 F.R.D. 558 (S.D.Fla.1973), *aff'd mem.,* 507 F.2d 1278 (5th Cir.1975), the trial court certified an action arising from the food poisoning of ship passengers, citing the risk of inconsistent adjudications. The court noted that the defendant could be sued in sequential suits until it lost a judgment. Subsequent plaintiffs could then make offensive use of the adverse judgment by arguing that the defendant was collaterally estopped from denying liability. The court reasoned that this created a risk of inconsistent adjudications. *Id.* Other courts have cited *Hernandez* in support of their decisions to certify class actions under this provision. *See, e.g., In re Bendectin Prod. Liab. Litig.,* 102 F.R.D. 239 (S.D.Ohio 1984) (litigation arising from the use of a drug that allegedly caused birth defects), *mandamus granted* 749 F.2d 300 (6th Cir.1984); *Coburn v. 4-R Corp.,* 77 F.R.D. 43 (E.D.Ky.1977) (litigation arising out of a fire at a supper club), *mandamus denied sub nom. Union Light, Heat & Power Co. v. United States Dist. Court,* 588 F.2d 543 (6th Cir.1978), *cert. dismissed* 443 U.S. 913, 99 S.Ct. 3103, 61 L.Ed.2d 877 (1979).

The majority of courts, however, interpret the phrase "inconsistent adjudications" more narrowly. They maintain that "inconsistent adjudications" was not designed to cover situations where the only inconsistency is that some potential class members recover and others do not. *See, e.g., McDonnell Douglas Corp. v. United States Dist. Court,* 523 F.2d 1083 (9th Cir.1975), *cert. denied* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976). Potential class actions that meet the requirements of Rule 23(A) must involve common issues of law or fact that are in dispute between one party and a broad class of individuals who cannot be joined in a single suit. In these cases, there is always the risk that without a

---

1. NIPSCO argues that the form of the trial court's certification order was inadequate. It characterizes the order as quoting from Trial Rule 23(B)(1) and (B)(3), but failing to make any findings of fact or conclusions of law. We fail to understand this argument in light of the fifteen findings of fact and eleven conclusions that constitute the order. NIPSCO also argues that the trial court failed to note on which portion of Trial Rule 23(B) it was relying. The trial court plainly concluded that the requirements of both (B)(1) and (B)(3) had been met.

class action, the party opposing the class may be exposed to individual suits and conflicting judgments on liability or inconsistent standards of conduct growing out of those suits. Therefore, Rule 23(B)(1)(a) must require more than the potential for different outcomes.

Other courts take an even more limited view of Rule 23(B)(1)(a). Some argue that the rule is designed to benefit the party opposing the class by eliminating the possibility that it will be subjected to inconsistent standards of conduct. These courts conclude that if the party opposing the class does not seek the benefit of the rule, its use is questionable. *See, e.g., Pruitt v. Allied Chem. Corp.*, 85 F.R.D. 100 (E.D.Va.1980). Other courts maintain that Rule 23(B)(1)(a) certification is not appropriate where the plaintiffs seek only unliquidated damages. *See, e.g., Payton v. Abbott Labs*, 83 F.R.D. 382 (D.Mass.1979).

■ Here, the trial court concluded that "there is a risk that a denial of certification would create the risk of the factors outlined in B(1)(a) and (b)." *Record* at 113. We disagree. The class members seek only unliquidated money damages from NIPSCO. They do not seek injunctive relief. There is no evidence in the record that separate actions by boat owners would create incompatible standards of conduct for NIPSCO.

Under Trial Rule 23(B)(1)(b), the class representative must demonstrate that the adjudications with respect to some class members would be dispositive or impair absent members' ability to protect their own interests. The requirements of the rule have not been met "if the only practical effect the action would have on the interests of other members of the class is the stare decisis effect on actions filed in the same jurisdiction, or the complexity and expense existing if no prior action had been brought." *Bowen v. Sonnenburg*, 411 N.E.2d 390, 399 (Ind.Ct. App.1980) (citations omitted). Here, again, there is simply no evidence that an adjudication of the claims of some members would impair absent members' ability to protect their interests. Thus, the trial court improperly concluded that Trial Rule 23(B)(1) was satisfied.

■ NIPSCO also argues that the trial court's conclusion that Trial Rule 23(B)(3) was satisfied is erroneous because the court failed to articulate a common issue which predominates over defenses individual to each boat owner, as required by Trial Rule 23(B)(3). *See Independence Hill Conservancy Dist. v. Sterley*, 666 N.E.2d 978 (Ind.Ct. App.1996). It maintains that there is no one set of operative facts that can establish liability, and because the court must determine the degree of fault for each individual plaintiff, no common issue predominates.

Considerable overlap exists between Trial Rule 23(A)(2)'s commonality requirement and Trial Rule 23(B)(3). *Connerwood Healthcare*, 683 N.E.2d at 1329. Trial Rule 23(A) requires that common questions exist while Trial Rule 23(B)(3) requires that they predominate. *Id.* In addition, Trial Rule 23(B)(3) requires that a class action be superior to other available means of adjudication. Here, there is evidence to support the trial court's findings that an issue of fact—the damage caused by emissions from NIPSCO's plant—predominated over individual issues and that the class action was superior to other methods for a fair and efficient adjudication of this controversy due to the potential size of the class. The class members were all damaged by the same course of conduct, a common nucleus of operative facts regarding emissions from NIPSCO's power generating plant. The issue of NIPSCO's liability for the emissions is the central issue with respect to each class member. Considering this evidence, we find that the determination that Trial Rule 23(B)(3) was satisfied was within the court's discretion.

Affirmed in part and reversed in part.

FRIEDLANDER, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

I fully concur as to Parts I, II, and III of the majority opinion. I further concur with respect to the discussion and treatment of Trial Rule 23(B)(3). I write separately in order to state my rationale for concluding

that certification under Rule 23(B)(1)(a) was not appropriate.

The majority, correctly I believe, notes that Rule 23(B)(1)(a) "must require more than the potential for different outcomes." Op. at 620. At first blush, the reasoning of the court in *Hernandez v. The Motor Vessel Skyward*, (1973) S.D.Fla., 61 F.R.D. 558, *affirmed* (1975) 5th Cir., 507 F.2d 1278, seemed applicable to the case before us. In *Hernandez*, the court, in part, premised its class certification in a mass tort claim upon the following:

> "The Court also finds that the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the parties opposing the class. It is conceivable that the defendants would be taken to task by one passenger after another until a judgment against the defendants was obtained. At that point, future plaintiffs could call the doctrine of collateral estoppel into play to bind the defendants on the issue of negligence in the preparation of food and water." *Id.* at 561. (Footnotes omitted).

Indiana has eliminated the requirements for identity of parties and mutuality of estoppel as a condition for employment of the doctrine of collateral estoppel as to issue preclusion. Accordingly, Indiana case law has recognized and approved the use of both defensive and offensive collateral estoppel. *Tofany v. NBS Imaging Systems, Inc.* (1993) Ind., 616 N.E.2d 1034. The application of offensive collateral estoppel has been viewed as appropriate if "[t]he party against whom the judgment is pled had a full and fair opportunity to litigate the issue", and if it is not "otherwise unfair under the circumstances of the particular case to apply collateral estoppel." *Hayworth v. Schilli Leasing, Inc.* (1996) Ind., 669 N.E.2d 165, 167; *In The Matter of C.M.* (1997) Ind.App., 675 N.E.2d 1134, 1137.

Given the circumstances of our case, in light of the concerns expressed in *Hernandez, supra,* 61 F.R.D. at 561, it would seem that if individual claims were to be required

against NIPSCO, a single successful negligence claim would result in employment of offensive collateral estoppel by any and all subsequent plaintiffs. In such instance, NIPSCO would be estopped to deny its negligence in producing harmful emissions. If the analysis were to terminate at this point, I would hold that the requirements for class certification under Rule 23(B)(1)(a) have been met.

However, the analysis does not end at this point. It is imperative to note that in adopting the use of collateral estoppel without regard to concerns of privity and mutuality, our Supreme Court clearly subjects employment of the doctrine to the requirements of the United States Supreme Court in *Parklane Hosiery Co., Inc. v. Shore* (1979) 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552. In *Parklane*, Justice Stewart, speaking for the court, unmistakably expressed the view that offensive collateral estoppel is particularly inappropriate for use in mass tort litigation. He did so by resort to an example as follows:

> "In Professor Currie's familiar example, a railroad collision injures 50 passengers all of whom bring separate actions against the railroad. After the railroad wins the first 25 suits, a plaintiff wins in suit 26. Professor Currie argues that offensive use of collateral estoppel should not be applied so as to allow plaintiffs 27 through 50 automatically to recover." *Id.* at 331, 99 S.Ct. at 651. (Citations omitted).

It may be readily seen that Professor Currie's example demonstrates the concerns expressed by the court in *Hernandez, supra,* 61 F.R.D. at 561. In this context, therefore, I would observe that collateral estoppel is not a genuine concern if multiple claims were required to be brought by each plaintiff against NIPSCO. Nevertheless, because Bolka has satisfied the requirements of Rule 23(B)(3), failure to satisfy 23(B)(1) is not fatal to the class certification.

Upon this basis, I concur.