Meghan RENE, by her parents and next friends, Michael and Robin RENE; Carl Carson, by his next friend, David Carson, Justin Hurrle, by his parents and friends, Patric and Patricia Hurrle; Jonathan Gibson, by his mother and next friend, Tammy Gibson, each of them individually and on behalf of a class of those similarly situated, Appellants–Plaintiffs,

v.

Dr. Suellen REED, in her official capacity as Indiana State Superintendent of Public Instruction, Appellee–Defendant.

No. 49A02–9907–CV–457.

Court of Appeals of Indiana.

April 4, 2000.

Kenneth J. Falk, Indiana Civil Liberties Union, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Beth H. Henkel, Frances H. Barrow, Deputy Attorneys General, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Plaintiffs, Meghan Rene (Meghan), Carl Carson (Carl), Justin Hurrle (Justin), and Jonathan Gibson (Jonathan), who are students with disabilities (collectively referred to as Students), bring this interlocutory appeal of the trial court's denial of their motion to certify this case as a class action on behalf of two proposed classes.

We reverse and remand.[1]

### ISSUES

The Students present two issues on appeal, which we restate as follows:

1. The Appellants' Petition for Oral Argument is hereby denied.

2. Although the trial court referred to this second class as subclass A, for clarity we will

1. Whether the trial court abused its discretion in denying class certification with regard to Class A.
2. Whether the trial court abused its discretion in narrowing and limiting the definition of Class B.[2]

### FACTS AND PROCEDURAL HISTORY

The Students bring this interlocutory appeal pursuant to Rule 4(B)(6) of the Indiana Rules of Appellate Procedure. On May 21, 1998, the Students filed their class action Complaint seeking injunctive and declaratory relief. The Complaint, filed by their parents on the Students' behalf, set forth claims under 42 U.S.C. § 1983 and the Individuals with Disabilities Education Act, 20 U.S.C. § 1401 ("IDEA"). The Students, as defined by proposed Class A, claim that the Appellee/Defendant, Dr. Suellen Reed (Dr. Reed), in her official capacity as Indiana State Superintendent of Public Instruction, violated their due process rights under the United States Constitution and the Indiana Constitution by requiring them to take and pass the Graduation Qualifying Examination ("GQE") when they had previously been exempted from standardized testing and/or had not been taught the subject matter on the tests. The Students, as defined by proposed Class B, claim that Dr. Reed violated their rights under the IDEA by requiring them to take the GQE without the testing accommodations and adaptations required by the Students' case conferences and individualized education programs.

In Indiana, students participate in the Indiana Statewide Testing for Educational Progress (ISTEP) testing program in the third, sixth, eighth and tenth grades. Ind. Code § 20–10.1–16–8. This test measures achievement in mathematics and language arts. Ind.Code § 20–10.1–16–7. The GQE

refer to this class as class B because both parties refer to this second class as class B in their appellate briefs.

is a portion of the tenth grade ISTEP examination.[3] Subject to two exceptions,[4]

3. The ISTEP examination is also known as ISTEP+. The Students refer to the ISTEP+ examination and the GQE interchangeably; however, to be clear, the GQE is only a portion of the ISTEP examination taken in the 10th grade, and it is that portion that is required to be passed as a prerequisite for receiving a high school diploma.

4. Ind.Code § 20–10.1–16–13 provides:
(a) Beginning with the class of students who expect to graduate during the 1999–2000 school year, each student is required to meet:
(1) the academic standards tested in the graduation examination; and
(2) any additional requirements established by the governing body; to be eligible to graduate.
(b) A student who does not meet the academic standards tested in the graduation examination shall be given the opportunity to be tested during each semester of each grade following the grade in which the student is initially tested until the student achieves a passing score.
(c) A student who does not achieve a passing score on the graduation examination may be eligible to graduate if all of the following occur:
(1) The principal of the school the student attends certifies that the student will within one (1) month of the student's scheduled graduation date successfully complete all components of the Core 40 curriculum as established by the board under IC 20–10.1–5.7–1.
(2) The student otherwise satisfies all state and local graduation requirements.
(d) A student who does not achieve a passing score on the graduation examination and who does not meet the requirements of subsection (c) may be eligible to graduate if the student does all of the following:
(1) Takes the graduation examination in each subject area in which the student did not achieve a passing score at least one (1) time every school year after the school year in which the student first takes the graduation examination.
(2) Completes remediation opportunities provided to the student by the student's school.
(3) Maintains a school attendance rate of at least ninety-five percent (95%) with excused absences not counting against the student's attendance.
(4) Maintains at least a "C" average or the equivalent in the courses comprising the credits specifically required for graduation by rule of the board.

all Indiana high school students who wish to receive a high school diploma must take

(5) Obtains a written recommendation from a teacher of the student in each subject area in which the student has not achieved a passing score. The recommendation must:
(A) be concurred in by the principal of the student's school; and
(B) be supported by documentation that the student has attained the academic standard in the subject area based upon:
(i) tests other than the graduation examination; or
(ii) classroom work.
(6) Otherwise satisfies all state and local graduation requirements.
(e) This subsection applies to a student who is a child with a disability (as defined in IC 20–1–6–1). If the student does not achieve a passing score on the graduation examination, the student's case conference committee may determine that the student is eligible to graduate if the case conference committee finds the following:
(1) The student's teacher of record, in consultation with a teacher of the student in each subject area in which the student has not achieved a passing score, makes a written recommendation to the case conference committee. The recommendation must:
(A) be concurred in by the principal of the student's school; and
(B) be supported by documentation that the student has attained the academic standard in the subject area based upon:
(i) tests other than the graduation examination; or
(ii) classroom work.
(2) The student meets all of the following requirements:
(A) Retakes the graduation examination in each subject area in which the student did not achieve a passing score as often as required by the student's individualized education program.
(B) Completes remediation opportunities provided to the student by the student's school to the extent required by the student's individualized education program.
(C) Maintains a school attendance rate of at least ninety-five percent (95%) to the extent required by the student's individualized education program with excused absences not counting against the student's attendance.
(D) Maintains at least a "C" average or the equivalent in the courses comprising the credits specifically required for graduation by rule of the board.
(E) Otherwise satisfies all state and local graduation requirements.

and pass the GQE. Ind.Code § 20–10.1–16–13. This includes students with disabilities. *Id.*

The Students are four Indiana high-school students, who were in the 10th grade at the time the Complaint was filed. The Students belong to first class of Indiana students, the class of 1999–2000, who are required to pass the GQE as a prerequisite to receiving a high school diploma.

As a condition of the State receiving federal financial assistance, the IDEA requires that students with disabilities must receive a public education which is free and appropriate given their specific needs. 20 U.S.C. § 1400(d); 20 U.S.C. § 1412(a)(1). Indiana receives money under the IDEA and is therefore bound by the federal requirements. Ind.Code § 20–1–6–1. The federal requirement that a student receive a free and appropriate education is ensured by means of an individualized education program ("IEP") which is prepared at least annually in a case conference which is attended by the students with disabilities' regular education teachers, special education teachers, parents and others who have knowledge and special expertise. 20 U.S.C. § 1414(d); Ind. Code § 20–1–6–1(5). The IEP contains the outline of the student's education, including the services to be provided and modifications to the general education program, including modifications to any state-wide assessments to be given to special education students. 20 U.S.C. § 1414(d).

Prior to the change in the state statute requiring that students pass the GQE, case conference could indicate that a student with disabilities was excused from taking the GQE or other standardized testing, while still on the diploma track. The case conference could also determine that the tests for these diploma bound students would be taken diagnostically, which meant that they were not given under normal testing conditions, and if the student failed, there would be no adverse consequences such as remediation or re-

tention. Prior to the GQE, students with disabilities on the diploma track received a high school diploma if they satisfied the requirements of their IEPs and the general state curriculum requirements, regardless of whether they took the standardized tests. Furthermore, prior to the GQE, there was not a requirement that in order to graduate, a student master the skills that are now tested by the GQE examination. The Students allege that as a result, many students with disabilities who were on a diploma track were not taught the information now tested on the GQE. Indeed, the State has acknowledged that there was no requirement that, prior to the GQE, students with disabilities be taught the skills which are now tested on the graduation examination. (R. 136–137).

One of the Students, Meghan, attends Ben Davis High School in Indianapolis, Indiana, and has received special education since the first grade. Prior to the GQE requirement, Meghan had always been excused from standardized testing. Meghan's IEP provided that she was in the diploma program and if she completed all her course work and complied with her IEP, she would receive a diploma. Meghan's IEP further provided that she be excused from standardized testing and also indicated that all tests were to be read to her. Meghan was first informed that she had to take the GQE in the fall of 1997. Meghan first took the exam in the fall of 1997 and the examination was not read to her. Also, Meghan's IEP provided that she be allowed to use a calculator during testing. This accommodation was also disallowed when she took the GQE. Meghan failed the exam, and as of February 1999, had yet to pass the GQE.

Carl attends Center Grove High School in Greenwood, Indiana, and has received special education since the first grade. Carl's IEP provided that all examinations be read to him. Carl was on the diploma track and his IEP indicated that he was to take standardized tests for diagnostic purposes only and that he was not to be

subjected to remediation or retention. Carl first took the GQE in the fall of 1997, and was unable to pass the examination prior to February 1999. The reading comprehension portions of the examination were not read to him. Since February 1999, Carl has passed the GQE.

Justin attends Carmel High School in Carmel, Indiana, and has received special education since the first grade. Prior to the GQE requirement, Justin had always been excused from standardized testing. Justin's IEP provided that he was in the diploma program and if he completed all his course work and complied with his IEP, he would receive a diploma. Justin's IEP further required that all tests were to be read to him in addition to other accommodations. Justin was first informed that he had to take the GQE in the spring of 1997. Justin first took the exam in the fall of 1997 and the examination was not read to him. Justin failed the exam and has yet to pass the GQE.

Jonathan attends Franklin Central High School in Franklin, Indiana. Jonathan has also received special education since the first grade. Prior to the GQE, he was not required to take any standardized tests; however, he was on the diploma track. His 1997 IEP provided that he would participate in the 10th grade ISTEP examination, but this was to be for diagnostic purposes only and he was not to be subjected to remediation or retention. His IEP provided that all tests be read to him; however the GQE was not. As of February 1999, Jonathan had not yet passed the GQE.

None of the representative plaintiffs are in the Core 40 curriculum program which would exempt them from the GQE. Further, all of the Students allege that they were not given sufficient notice that they would be required to pass the GQE and were not given the opportunity to adjust their curriculum in order to take courses that would specifically prepare them for the GQE. Additionally, the Students assert that they would not qualify under the waiver provision of Ind.Code § 20–10.1–16–13(e) because they have not obtained the necessary proficiencies in the tested areas to allow their teachers to so certify.

On May 21, 1998, the Students filed a motion for certification of the class action. After twice amending the proposed class definitions, the Students proposed two separate classes and defined them as follows:

*Class A:*

All children with disabilities (as defined in *Ind.Code* 20–1–6–1) who have been, are being, or will be required to pass the Indiana Statewide Testing for Educational Progress (ISTEP+) test as a condition of receiving a High School diploma and who, prior to the advent of the ISTEP+ examination were designated as being in the diploma track, but who had, in the past, been excused from standardized testings, and/or whose individualized education plans did not provide that they were to be taught the subjects tested on the ISTEP+ examination.

(R. 40–41)

*Class B:*

All children with disabilities (as defined in *Ind.Code* 20–1–6–1) who have been, are being, or will be required to pass the Indiana Statewide Testing for Educational Progress (ISTEP+) test as a condition of receiving a High School diploma and who have, or at the time of taking the ISTEP+ graduation exam had or will have, individualized educational plans which exempted them or which will exempt them from standardized testing or which allow or which will allow for adaptations and accommodations during testing *which are not or will not be honored during the testing.*[5]

---

**5.** The additional language in italics was added to the definition of Class B per an Order of the trial court, dated March 24, 1999, granting the Students' "Motion to Slightly Amend Definition of Class B." (R. 154). However this language was not included in the trial

(R. 40).

A hearing was held on the Students' Motion to Certify on March 25, 1999. On April 5, 1999, the trial court issued its Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification. This Order denied the Students' Motion to Certify with regard to Class A, concluding that the Students had failed to exhaust their administrative remedies, that their claims were not ripe for adjudication, that they did not have standing, and that they failed to satisfy the requirements of Trial Rule 23(B)(2). The trial court also found that the definition of Class A was overly broad. The trial court granted the Motion to Certify as to Class B, but narrowed and limited the definition of Class B as follows:

> [A]ll students with disabilities whose case conference committees have determined through the individualized education program that written exams and other written assessments are to be read to them as an accommodation but as to whom the State requires that this accommodation not be provided when the student takes the reading comprehension portion of the graduation qualifying examination.

(R. 176). The trial court rejected the Students' definition of Class B, finding that the Students who required other accommodations failed to exhaust their administrative remedies.

This appeal followed.

## DISCUSSION AND DECISION

### Standard of Review

 The Students appeal the trial court's denial of their Motion to Certify with regard to Class A and the trial court's modification and limitation of their proposed definition of Class B. "The determination of whether an action is maintainable

as a class action is committed to the sound discretion of the trial court." *Northern Indiana Public Service Co. v. Bolka*, 693 N.E.2d 613, 615 (Ind.Ct.App.1998), *trans. denied*. Therefore, in reviewing a trial court's certification of a class action, we employ an abuse of discretion standard of review. *Lake County Trust Co. v. Wine*, 704 N.E.2d 1035, 1042–1043 (Ind.Ct.App. 1998). An abuse of discretion occurs when the trial court's " 'decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.' " *Hefty v. All Other Members of the Certified Settlement Class*, 680 N.E.2d 843, 848 (Ind.1997), *reh'g denied* (citation omitted).

Thus, the trial court's decision herein regarding the Students' motion for class certification will be reviewed for an abuse of discretion.

### Class Certification

 To obtain class certification, the students must satisfy all of the requirements of Trial Rule 23(A). However, in making a determination regarding class certification, a trial court may not conduct a preliminary inquiry into the merits of the suit. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). "A certification hearing is not intended to be a trial on the merits, and Trial Rule 23 does not require a potential class representative to show a likelihood of success on the merits in order to have his claim certified as a class action." *Bolka*, 693 N.E.2d at 617. Assuming the merits of an action, a trial court must determine whether the plaintiff has satisfied the requirements for class certification under Trial Rule 23. *Eggleston v. Chicago Journeymen Plumbers'*, 657 F.2d 890, 895 (7th Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982).[6] The

court's Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification. (R. 159).

6. Because Trial Rule 23 is based upon Fed. R.Civ.P. 23, it is appropriate for our courts to look to federal case law for interpretations of the federal rule when applying the Indiana

representative plaintiffs have the burden to show that all the requirements for class certification have been met. *Bolka,* 693 N.E.2d at 615. "Failure to meet any one of the mandated requirements results in the denial of class status." *Perfect Circle Corp. v. Case,* 444 N.E.2d 1211, 1213 (Ind. Ct.App.1983).

Trial Rule 23(A) states that members of a class may sue as representative parties on behalf of the entire class if:

1) the class is so numerous that joinder of all members is impracticable;

2) there exists questions of law or fact common to the class;

3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and,

4) the representative parties will fairly and adequately protect the interests of the class.

Trial Rule 23(A).

The Students argue that they satisfied all four requirements of Trial Rule 23(A). The trial court, however, found that the proposed classes were not entitled to class certification based on other grounds and did not address whether Class A and B, as defined by the Students, satisfied the provisions of Trial Rule 23(A). Dr. Reed does not argue that the Students failed to satisfy Trial Rule 23(A), but rather asserts that the Students failed to exhaust their administrative remedies, lacked standing, failed to satisfy Trial Rule 23(B)(2), and that their claims are not ripe.

■ In reviewing the requirements of Trial Rule 23(A), we conclude that Class A and Class B, as proposed and defined by the Students, satisfy the requirements of Trial Rule 23(A). Trial Rule 23(A)(1) requires that the class be so numerous that joinder of all members is impracticable. "[N]umerosity analysis does not rest on a magic number but permissive joinder is usually deemed impracticable where class members number 40 or more." *Conner-*

rule. *In re Matter of Tina T.,* 579 N.E.2d 48, 55 (Ind.1991); *Connerwood Healthcare, Inc. v.*

*wood Healthcare, Inc.,* 683 N.E.2d at 1326 (citing *Chandler v. Southwest Jeep–Eagle, Inc.,* 162 F.R.D. 302, 307 (N.D.Ill.1995)). In this case, the evidence showed that in the Metropolitan School District of Warren Township in Marion County, Indiana, there were over one thousand (1,000) students with disabilities whose IEPs specified that they were in a diploma track but who were excused from statewide assessments or who were allowed to take them diagnostically. (R. 102). This evidence represents just one school district within the State. Consequently, the Students satisfied the requirement of numerosity.

■ Trial Rule 23(A)(2) requires that there exist questions of law or fact common to the class. "The commonality prerequisite focuses on the characteristics of the class" and "[t]his requirement is satisfied if the individual plaintiffs' claims are derived from a common nucleus of operative fact, described as a common course of conduct." *Connerwood Healthcare, Inc.,* 683 N.E.2d at 1327. Here, the Students in the proposed Class A claim that their due process rights were violated when they were required to take and pass the GQE as a prerequisite for receiving a high school diploma even though their IEPs excused them from standardized tests and/or their IEPs did not provide that they were to be taught the subjects tested on the GQE. The Students in Class B claim that their rights under the IDEA were violated when they were required to take and pass the GQE as a prerequisite for receiving a high school diploma even though their IEPs, which allowed for adaptations and accommodations during testing, were not honored during the testing. These claims derive from the same operative facts, the requirement that the Students take and pass the GQE, and constitute a common course of conduct; therefore, the commonality requirement is satisfied.

*Estate of Herron,* 683 N.E.2d 1322, 1326 (Ind. Ct.App.1997).

 Trial Rule 23(A)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. Typicality focuses on the desired characteristics of the class representative; however, subdivision (A)(3) does not require a showing that all plaintiffs' claims be identical. *Id.* This element is satisfied if "the representative plaintiff's claims are neither in conflict with nor antagonistic to the class as a whole." *Edward D. Jones & Co. v. Cole,* 643 N.E.2d 402, 407 (Ind.Ct.App.1994), *trans. denied.* Here, the Students seek to change policy and practices applicable to all class members. Thus, the Students are typical of the classes that they seek to represent.

 Trial Rule 23(A)(4) requires that the representative parties fairly and adequately protect the interests of the class.

> The Trial Rule 23(A)(4) adequacy requirement has three components: 1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; 2) the named representative must have a sufficient interest in the outcome to ensure vigorous advocacy; and 3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously.

*Bolka,* 693 N.E.2d at 618. The relief sought by the Students is identical to the relief sought for the entire class and is consequently not inconsistent with the interests of the class. Further, there has been no claim by Dr. Reed that counsel for the Students is not skilled and experienced in this type of litigation. Therefore, the Students have fulfilled the requirements of Trial Rule 23(A)(4).

Accordingly, the Students have satisfied all of the requirements of Trial Rule 23(A) as to both proposed Class A and B, as defined by the Students.

## Trial Rule 23(B)(2)

In addition to satisfying the requirements of Trial Rule 23(A), the Students must also satisfy at least one prerequisite of Trial Rule 23(B). *Wine,* 704 N.E.2d at 1043. In this case, the Students assert that they have fulfilled the requirements of Trial Rule 23(B)(2), which provides:

> An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition: ...
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.
>
> ...

However, the trial court concluded that the Students did not satisfy the requirements of Trial Rule 23(B)(2), except for that limited portion of Class B as defined and certified by the trial court. In concluding that the requirements of this rule were not met, the trial court found that the local school district committed the acts of which the Students complained, and not the State. Dr. Reed agrees and argues that the trial court properly denied certification to Class A and limited the definition of Class B because the requirements of Rule 23(B)(2) were not met.

Nonetheless, the Students argue that both Classes A and B, as proposed and defined by them, satisfy Trial Rule 23(B)(2) because it was the State Department of Education, through its representative Dr. Reed, that required the Students to take and pass the GQE subject to waivers, as a requirement for receiving a high school diploma, despite the provisions of the Students' IEPs. The Students further argue that it is the State that has changed the rules for graduation in violation of due process, and who admittedly refuse to honor a number of adaptations and accommodations prescribed by the IEPs. Finally, the Students argue that only an injunction against the State can remedy the constitu-

tional and legal violations of which both classes complain.

█ We agree that the Students have fulfilled the requirements of Trial Rule 23(B)(2). The crux of their complaint is that in order to receive a high school diploma, the State has required the Students to take and pass the GQE, subject to waivers, even though the Students have been previously placed on the "diploma track" while being excused from standardized testing.

Dr. Reed argues that it is not the State that is requiring the students to take the GQE, but it is the local school districts. She further argues that it was the Students' case conferences and not the State, who excused the Students from standardized testing. She also asserts that it was the local school districts and the case conferences that decided what course work the Students would pursue; thus, if the Students were unprepared for the GQE it was the fault of the local school district. Dr. Reed, however, seems to ignore the statutory requirement that makes it mandatory for all students, including students with disabilities, to take and pass the GQE as a prerequisite for receiving a high school diploma, subject to the two exceptions. Ind.Code § 20–10.1–16–13. This requirement for a diploma is what the Students take issue with and this requirement has been put in place by the State and not the local school districts.

Therefore, the party opposing the class, here Dr. Reed, has acted or refused to act on grounds generally applicable to the class, because the GQE is a statewide requirement.

### Exhaustion of Administrative Remedies

The trial court concluded that the Students failed to exhaust their administrative remedies prior to filing suit. Additionally, Dr. Reed argues that even if the classes proposed by the Students satisfy the four prongs of Trial Rule 23(A), the Students nevertheless failed to exhaust the administrative remedies available to them with regard to both Class A and Class B. The Students assert, however, that it was unnecessary to exhaust the administrative remedies due to the futility of the remedies.

"Generally speaking, if an administrative remedy is available, it must be pursued before the claimant is allowed access to the courts." *T.W. Thom Const., Inc. v. City of Jeffersonville,* 721 N.E.2d 319, 322 (Ind.Ct. App.1999). The administrative remedies available in a special education case are set out in both statute and regulations. The first step is the case conference where the student's program is developed and their right to a free, appropriate and individualized education is assured. However, at any time a parent may initiate a due process hearing concerning issues involving his or her child's free and appropriate education. 20 U.S.C. § 1415. In Indiana, the hearing is conducted before an independent hearing officer appointed by the state superintendent of public instruction. 511 IAC 7–15–5. A further appeal can follow to the state board of special education appeals. 511 IAC 7–15–6. Federal law contemplates that before judicial review is sought in a special education case is sought these administrative appeals are to be completed. 20 USC § 1415.

█ Nevertheless, "parents may bypass the administrative process where exhaustion would be futile or inadequate." *Honig v. Doe,* 484 U.S. 305, 327, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). If the administrative procedure is incapable of offering a remedy for a party's complaint and is incapable of addressing the issues presented by a party's claim, exhaustion is not required. *Rambo v. Cohen,* 587 N.E.2d 140, 144 (Ind.Ct.App.1992). "When the character of the question presented is beyond the pale of the agency's competency, expertise, and authority, failure to exhaust will be excused." *Id.* In special education cases, exhaustion has been determined to be futile or inadequate if purely legal questions are raised, *Pihl v. Massachusetts Department of Education,* 9 F.3d 184, 190

(1st Cir.1993), if the agency acted in violation of law, *Heldman v. Sobol,* 962 F.2d 148, 159 (2nd Cir.1992), or if the wrong cannot be addressed in the administrative process, *Bray by Bray v. Hobart City School Corporation,* 818 F.Supp. 1226, 1233 (N.D.Ind.1993).

### Class A

■■■ Here, the Students argue that exhaustion would be futile in the case of proposed Class A because the issues presented by Class A are pure questions of law. The Students in Class A claim that the imposition of the GQE requirement violates their due process rights and that the administrative agency does not have the authority to declare the GQE unconstitutional as applied to them. "Indiana law, like its federal counterpart, allows a plaintiff to by-pass administrative procedures when the claim is that a statute is void in its entirety." *Galbraith v. Planning Department,* 627 N.E.2d 850, 853 (Ind.Ct. App.1994). The Students further assert that the State has conceded that the administrative agency has no authority to tell a student with disabilities that they can have a high school diploma without taking and passing the GQE. Robert Marra, Director of the Division of Special Education for the Indiana Department of Education, testified as follows:

> Q. Back to my original question, which I think you answered and I apologize, the case conference does not have the power to tell a student you do not have to take the test but you get a diploma?
>
> A. Correct.

(R. 133).

Thus, the Students argue that because the administrative agency does not have the authority to provide them with the relief they seek, the process is futile. We agree that with regard to Class A, the Students have presented a pure question of law, because the administrative agency does not have the authority to declare a state statute unconstitutional or to give a

student with disabilities permission to receive a diploma without passing the GQE. Therefore, we find that the Students with regard to proposed Class A should have been excused from exhausting the available administrative remedies due to futility.

### Class B

■■■ The Students further argue that exhaustion of administrative remedies would be futile with regard to Class B, as it is proposed and defined by them. The Students assert that the claims of Class B concern the refusal to recognize accommodations and adaptations mandated by the Students' IEPs. They argue that this concerns a pure legal issue beyond the administrative agencies' expertise because the claim is based on a violation of the law by the State itself. Further, the Students argue that the members of Class B had the accommodations and adaptations prescribed for them in their IEPs at the case conferences and those accommodations and adaptations were ignored by the State, consequently, it is unreasonable to require that they return to the case conference to address this issue.

The State acknowledges that it has determined not to honor certain accommodations during the GQE which were required by the students' with disabilities' case conferences and provided by their IEPs. These prohibited accommodations include the following:

1. An IEP which requires that reading comprehension portions of the examination to be read to the students

2. An IEP which requires that multiple choice tests not contain more than three questions.

3. An IEP which requires that a student be provided with color coded prompts.

4. An IEP which provides that the language of mathematical story problems be reduced or simplified.

5. An IEP which provides that a diploma can be awarded without taking the GQE.

(R. 133, 138, 141–144, 153).

However, the trial court recognized only one of the denied accommodations. The trial court concluded that the "[State's] policy does not permit an exam to be read aloud during the reading comprehension part of the ISTEP+ exam, and it would be futile for this Plaintiff to seek a different result through the administrative process." (R. 175). The trial court further concluded that the "definition [of Class B] must be narrowed to address only those accommodations or modifications of the ISTEP+ exam that the Defendant's policy does not permit." (R. 175). Thereafter, the trial court narrowed the definition of Class B to include only those students with disabilities to whom the State has denied the accommodation that the reading comprehension portion of the exam be read to them.

The Students argue that because the trial court recognized the futility of the administrative process where the State acknowledged that it denied the Students the accommodation of having the reading comprehension portion of the GQE read to them, the trial court should have also concluded that it is equally futile for the students to exhaust administrative remedies with regard to the other above-listed accommodations that the State has also admittedly refused to provide. We agree.[7]

Thus, we conclude that the trial court improperly narrowed and limited the definition of Class B to just those students with disabilities who were denied the accommodation of having the reading comprehension portion of the GQE read to them because the State further acknowl-

edged that the other above-listed accommodations were also denied.

However, Dr. Reed argues that the Students are not properly representative of other students with disabilities who may have been denied the accommodations numbered two through five, as listed above, because neither Meghan, Carl, Justin or Jonathan were denied these accommodations. This challenges the "typicality" of the representative plaintiffs' claims. As previously addressed, Trial Rule 23(A)(3) does not require a showing that all of the plaintiffs' claims be identical. *Connerwood Healthcare, Inc.*, 683 N.E.2d at 1327. Again, this requirement is fulfilled if the representative plaintiff's claims "are neither in conflict with nor antagonistic to the class as a whole." *Cole*, 643 N.E.2d at 407. Here, the Students' claims are not in conflict nor antagonistic to the class as a whole, and thus, the disabled students properly represent Class B, as defined by the disabled students.

### Standing and Ripeness

■ The trial court further concluded that the Students' claims were not ripe. Specifically, the trial court found that the Students had not yet, at the time of filing the complaint, fulfilled all of the other requirements of graduation other than passing the GQE. Because the Students had not completed the other diploma requirements, the trial court concluded that the matter was not ripe for adjudication.

In support of this conclusion the trial court cited *Brookhart v. Illinois State Board of Education*, 697 F.2d 179, 182 (7th Cir.1983), n. 4. (R. 167). In *Brookhart*, the court found that three of the fourteen plaintiffs lacked standing because they had not taken the graduation test at issue. *Id.*

---

**7.** However, there are certain accommodations that were specifically recognized and allowed by the State during the GQE, such as the use of a calculator on the mathematical portions of the GQE or having the instructions read to a student with disabilities. With regard to these accommodations, the Stu-

dents who were denied such accommodations were properly required by the trial court to exhaust their administrative remedies prior to pursuing a claim in the courts because the available administrative remedies were not futile.

However, here the representative plaintiffs herein have all taken and failed the GQE.

 "Ripeness relates to the degree to which the defined issues in a case are based on actual facts rather than on abstract possibilities . . ." *Indiana Dept. of Environmental Management v. Chemical Waste Management, Inc.*, 643 N.E.2d 331, 336 (Ind.1994). A court ruling on a ripeness challenge must consider " 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.' " *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n.*, 461 U.S. 190, 201, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (citation omitted). The Students argue that the denial of due process is in and of itself an actionable claim.[8] Thus, the Students argue that their claim is not just based on the denial of a high school diploma, but rather on the requirement that they submit to the GQE when they have previously been excused from standardized testing and when they have not been properly prepared for the subjects covered by the examination. The Students assert that the claim was ripe at the time they were required to submit to the GQE without the accommodations provide for in their IEPs. We agree.

The Students' claims, as set forth in their Complaint, are for violations of due process under the United States and Indiana Constitutions and for violations of the IDEA. If these alleged violations occurred, they occurred at the time the Students were required to take the GQE. Thus, the Students should not have to wait until they are actually denied a high school diploma to pursue these claims as their claims are based on actions by the State that have already transpired. Accordingly, the Students' claims are ripe for adjudication.

 To have standing to challenge the constitutionality of a statute, a party must establish that his or her rights were adversely affected by operation of both the statute and the particular section he is attacking. *Gross v. State*, 506 N.E.2d 17, 21 (Ind.1987). Again, the Students submit that they have standing to bring this action because the claims they allege, the denial of due process and violation of IDEA, have already occurred. The Students argue that the requirement that they pass the GQE without sufficient notice or preparation is violative of their constitutional rights. Thus, the Students have presented a claim that their rights were adversely affected by operation of the graduation examination statute, and therefore, they have standing to bring this claim.

### Breadth of Class Definitions

 Without additional comment, the trial court further concluded that the definition of Class A is too broad. "A class definition must be specific enough for the court to determine whether or not an individual is a class member." *Independence Hill Conservancy Dist. v. Sterley*, 666 N.E.2d 978, 981 (Ind.Ct.App.1996). "Without a properly defined class, a class action cannot be maintained. However, a court can redefine a class in order to sustain the lawsuit." *Id.* at 982. Thus, overbreadth in a class definition is not fatal since the trial court can redefine the class to eliminate the overbreadth problem, *sua sponte* if necessary. *Id.*

 Here, the definition of Class A, as proposed and defined by the Students, is specific enough for the court to determine whether or not an individual is a class member. Class A includes all students with disabilities who are required to take

---

**8.** Due process is violated when a graduation exam is "fundamentally unfair in that it may have covered matters not taught in the schools of the state." *Debra P. v. Turlington*, 644 F.2d 397, 404 (5th Cir.1981). Further, the *Brookhart* decision held that due process protections require that handicapped students be given sufficient notice of a minimal competency exam in order for them to prepare adequately to satisfy the new requirement and one and one-half years was inadequate notice. *Id.* at 186–187.

and pass the GQE as a condition of receiving a High School diploma and who were designated as being in the diploma track, but who had previously been excused from standardized testings, and/or whose IEPs did not provide that they were to be taught the subjects tested on the GQE. The definitive terms of Class A are precise and definite. Thus, the definition of Class A was not overly broad.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred in denying class certification to Class A, as proposed and defined by the Students, and by redefining and narrowing the definition of Class B.

Reversed and remanded.

SHARPNACK, C.J., and KIRSCH, J., concur.