**JK HARRIS & COMPANY, LLC, An Indiana Foreign Limited Liability Company, Appellant–Defendant,**

v.

**Ronald SANDLIN, On Behalf of Himself and All Others Similarly Situated, Appellee–Plaintiff.**

No. 49A05–1003–CT–184.

Court of Appeals of Indiana.

Jan. 31, 2011.

Rehearing Denied March 24, 2011.

---

Gary L. Miller, Tammy J. Meyer, Miller Meyer LLP, Indianapolis, IN, Attorneys for Appellant.

Chad D. Wuertz, Zachary T. Rosenbarger, Wuertz Law Office, LLC, Indianapolis, IN, Donald B. Kite, Sr., Dean–Webster, Wright & Kite, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Ronald Sandlin ("Sandlin") obtained a default judgment against JK Harris & Co., LLC ("JK Harris") in Marion Superior Court and successfully sought to certify a class of plaintiffs pursuant to Trial Rule 23. JK Harris later filed a Trial Rule 60(B) motion to set aside the default judgment and the class certification, both of which the trial court denied. Appealing the denial of its motion to set aside, JK Harris raises the following issues, which we reorder and restate as:

I. Whether the trial court abused its discretion when it denied JK Harris's Trial Rule 60(B) motion to set aside the default judgment;

II. Whether the trial court was required to dismiss the cause and order the parties to binding arbitration; and,

III. Whether the trial court abused its discretion when it refused to set aside the class certification.

We affirm the trial court's denial of the motions to set aside the default judgment and the class certification, but remand for a new evidentiary hearing to define the plaintiff class with more specificity.

### Facts and Procedural History[1]

In 2006, the Internal Revenue Service ("the IRS") informed Sandlin that he was

---

1. We heard oral argument in this case on January 10, 2011, in the Indiana Court of

delinquent in payment of his federal income tax. Sandlin contacted JK Harris for tax relief assistance. JK Harris is a nationwide tax resolution firm with six locations in Indiana. JK Harris maintains its primary office in South Carolina and is organized under the laws of that state.

Sandlin entered into a contract with JK Harris agreeing to pay $4,350 for tax assistance. Among other things, JK Harris agreed to submit an Offer in Compromise to the IRS. JK Harris first sent a letter to the IRS requesting a refund or credit for Sandlin's 1999 tax return. The IRS rejected the request because a refund or credit cannot be granted more than three years after the tax return is due. JK Harris then sent the Offer in Compromise to the IRS stating that Sandlin would agree to pay $344. The IRS rejected the offer and countered that Sandlin could pay $29,196.70 to settle his delinquent tax debt. Ultimately, JK Harris was unable to achieve a reduction in Sandlin's tax debt.

After JK Harris refused to refund Sandlin's $4,350 fee, Sandlin filed a four-count complaint against JK Harris in Marion Superior Court on August 19, 2009.[2] In the complaint, Sandlin alleged one count of negligence and one count of breach of the fiduciary duty owed to Sandlin, as individual claims inuring to Sandlin. Specifically, Sandlin claimed that JK Harris knew or should have known it could not assist Sandlin with his delinquent IRS payments because the IRS rules prohibit a credit or refund more than three years after the tax return due date. Further, Sandlin alleged that JK Harris knew that the IRS's acceptance of the Offer in Compromise was improbable. Sandlin also claimed that JK

Harris was negligent for 1) incorrectly filing a tax return in Virginia showing that Sandlin owed the state $728.25, and failing to help Sandlin resolve the matter; and 2) transmitting another person's tax information to Sandlin.

Sandlin also alleged one count of deceptive advertising and one count of unjust enrichment as class claims and requested that the trial court certify the matter as a class action. Under the deceptive advertising count, Sandlin alleged and defined the class to be:

a. All persons located in Indiana

b. who responded to advertising from JK Harris; and

c. who contracted with JK Harris for tax resolution services that included the preparation and negotiation of an offer in compromise, paid fees to JK Harris, but did not receive the tax relief sought and did not receive a refund or other form of settlement; [ ]

on or after a date six (6) years prior to this filing.

Appellant's App. p. 13. Sandlin alleged that the class was "so numerous that joinder of all members is impractical." *Id.* Finally, Sandlin claimed that "[t]here are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members." *Id.*

In his unjust enrichment count, Sandlin alleged and defined the class to be:

a. All natural persons located in Indiana

b. who contracted with JK Harris for tax resolution services that included the preparation and negotiation of an [offer

---

Appeals Courtroom. We thank counsel for their advocacy.

**2.** JK Harris observes that the copy of the contract attached to Sandlin's complaint is

nearly illegible. After JK Harris finally entered an appearance in the litigation, it filed with the trial court a copy of the contract as an oversized exhibit.

in compromise], paid fees to JK Harris, but did not receive the tax relief sought and did not receive a refund or other form of settlement; and

c. who paid JK Harris any amount of money but did not receive an accepted OIC or other similar tax relief

on or after a date six (6) years prior to this filing.

*Id.* at 15–16.

The record shows that Sandlin's complaint and accompanying summons were served by the Marion County Sheriff on JK Harris's registered agent in Indiana on August 21, 2009; however, JK Harris did not respond to Sandlin's complaint and an appearance was not entered on its behalf.

Thereafter, on October 6, 2009, Sandlin filed his seven-page motion for class certification, a motion which included forty-one pages of exhibits pertaining to the class certification requirements of Trial Rule 23, including a final judgment entered in a similar class action case against JK Harris in South Carolina. As JK Harris had not yet appeared or filed an answer, the motion was served by a first class mail copy to JK Harris's registered agent in Indiana sent by Sandlin's counsel on October 6, 2009. The trial court showed the motion filed on that same date and set a hearing on Sandlin's motion for class certification for November 2, 2009. The trial court's order setting the hearing indicates that it was sent to JK Harris's registered agent in Indiana, but the chronological case summary ("CCS") does not contain an entry stating that the order was served on either party. *See* Appellant's App. pp. 3, 99. Moreover, there is no entry indicating whether the November 2, 2009 hearing was held.

While his motion for class certification was pending, on November 4, just six short days before the previously scheduled hearing on his motion for class certifica-

tion, Sandlin filed an application for default judgment with certification of service of process by Sandlin's attorney, Chad Wuertz, by first class mail, postage prepaid on "the following party of record," but with no address listed for JK Harris or anyone else. Appellant's App. p. 102. On November 10, 2009, the trial court granted Sandlin's application for default judgment and motion for class certification. Once again, under the distribution list on the November 10, 2009 order, the court listed JK Harris's registered agent's address, but the CCS does not indicate that the order was served on either party.

On November 17, 2009, in response to motions filed by Sandlin, the court issued an order directing the parties to appear for a hearing on December 28, 2010 for the purpose of 1) "identifying the individual members of the certified plaintiff class," 2) "determining the method and form of class notification," and 3) "hearing evidence related to the Plaintiff's request for expenses related to class notification." *Id.* at 114. The court also ordered JK Harris to provide Sandlin with a digital list of Indiana residents who contracted with JK Harris for tax resolution services, paid fees to JK Harris, and did not receive the tax relief sought. The order indicated that it should be distributed to JK Harris at both its registered agent's address and a Charleston, South Carolina address. The CCS contains a November 19, 2009 entry stating, "Miscellaneous order served by NF3–Other (all other reasons) on 11/19/09 at 3:00 PM." *Id.* at 3.

JK Harris failed to appear at the December 28, 2009 hearing. At the hearing, Sandlin filed a motion for award of damages on his own behalf and the class. Sandlin also filed a motion for rule to show cause because JK Harris had not provided records of persons who contacted JK Harris for tax resolution services, who paid

fees to JK Harris, who did not receive the tax relief sought, and who did not receive a refund or other form of settlement, which was required by the November 17, 2009 court order. These motions were served by a first class mail copy to JK Harris's registered agent in Indiana sent by Sandlin's counsel.

The trial court granted Sandlin's motion for rule to show cause and ordered "the highest on-duty manager or executive officer located at JK Harris & Company, LLC's location at 450 East 96th Street, Suite 500" to appear at a show cause hearing on January 25, 2010. Appellant's App. p. 149. This order was served on JK Harris at the 96th Street address by the Hamilton County Sheriff, who delivered "a copy to the Defendant personally." Appellant's App. pp. 149–50. On January 11, 2010, the order was also served by the Berkley County (South Carolina) Sheriff on Heidi Benton, JK Harris's Vice–President of Legal Affairs, at its corporate offices in Goose Creek, South Carolina. Tr. p. 23.

JK Harris failed to appear at the show cause hearing, and on January 26, 2010, the trial court found JK Harris in contempt of court and fined JK Harris in the amount of $10,000. The court also issued writs of attachment for each of JK Harris's six Indiana offices, and awarded attorney fees to Sandlin. The court's contempt citation and writ of attachment indicates distribution to JK Harris at its registered agent's address. The CCS contains the following entry dated January 26, 2010: "Miscellaneous order served by o/co shrf-copy on 1/26/10 at 11:59 PM." Appellant's App. p. 5.

After learning that its Indiana offices had been closed by order of the court, JK Harris retained counsel who entered his appearance on February 2, 2010. JK Harris then filed a motion to stay the proceedings, and a hearing scheduled for February 4, 2010 was continued to February 22, 2010. JK Harris then filed its motion to set aside default judgment, set aside the class certification, and set aside fines and attorney fee award, compel arbitration, dismiss, and a request for attorney fees and costs.

In its motion, JK Harris argued that the judgment should be set aside because the parties' contract provides that binding arbitration would be the sole remedy in the event of any dispute or claim. JK Harris therefore claimed that the trial court lacked subject matter jurisdiction in this matter and its judgment was void.[3] On February 25, 2010, the trial court denied all of JK Harris's pending motions and awarded an additional $7,024.69 in attorney fees to Sandlin. The court stayed the execution of its judgment pending resolution of this interlocutory appeal.

### I. JK Harris's Trial Rule 60(B) Motion to Set Aside Default Judgment

JK Harris argues that the trial court abused its discretion when it denied its Trial Rule 60(B) motion for relief from judgment. The burden is on the movant to establish grounds for Trial Rule 60(B) relief. *In re Paternity of P.S.S.*, 934 N.E.2d 737, 740 (Ind.2010). "A motion made under subdivision (B) of [Trial Rule] 60 is addressed to the 'equitable discretion' of the trial court; the grant or denial of the Trial Rule 60(B) motion 'will be dis-

3. Although JK Harris also raised this argument in its Appellate Brief, at oral argument, counsel for JK Harris conceded that the trial court had subject matter jurisdiction over the case and its claim was simply that the trial

court erred when it exercised jurisdiction. *See Packard v. Shoopman*, 852 N.E.2d 927, 930 (Ind.2006) (citing *K.S. v. State*, 849 N.E.2d 538, 540 (Ind.2006)).

turbed only when that discretion has been abused.'" *Id.* at 740–41.

In reviewing the discretionary act of the trial court, we note that the term "discretion" implies flexibility in light of varying circumstances and the absence of a hard and fast rule or a mandatory procedure. Discretion is a privilege allowed a judge within the confines of justice to decide and act in accordance with what is fair and equitable. The exercise of judicial discretion must be examined in light of and confined to the issues of the particular case, and is reviewable only for an abuse thereof.

*In re Marriage of Jones*, 180 Ind.App. 496, 499, 389 N.E.2d 338, 341 (Ind.Ct.App. 1979).

■ For the first time on appeal, JK Harris argues that default judgment should be set aside under Trial Rule 60(B)(1) because it did not receive adequate notice of the proceedings and under Trial Rule 60(B)(8) because equity demands that the judgment be set aside. JK Harris has waived these arguments for failing to raise them to the trial court. *See Hite v. Vanderburgh County Office of Family and Children*, 845 N.E.2d 175, 180–81 (Ind.Ct.App.2006) (stating that constitutional issues, such as lack of due process, may be waived if the issue is raised for the first time on appeal); *Morequity, Inc. v. Keybank, N.A.*, 773 N.E.2d 308, 315 (Ind.Ct.App.2002), *trans. denied.*

■ Waiver notwithstanding, we conclude that JK Harris received adequate notice of the proceedings, and therefore, cannot establish that its neglect was excusable. Trial Rule 60(B)(1) provides, in relevant part: "On motion and upon such terms as are just the court may relieve a party ... from an entry of default, ... including a judgment by default, for the following reasons: (1) mistake, surprise, or excusable neglect[.]" The trial court's discretion is necessarily broad in deciding whether to vacate a default judgment because any determination of excusable neglect, surprise, or mistake must turn upon the unique factual background of each case. *Ross v. Bachkurinskiy*, 770 N.E.2d 389, 392 (Ind.Ct.App.2002) (citation omitted). The trial court must balance the need for an efficient judicial system with the judicial preference for deciding disputes on the merits. *Id.*

JK Harris does not dispute that it was served with Sandlin's complaint, or that it failed to file an answer or appearance until after default judgment had been entered and the company had been found in contempt of court. Appellant's Br. at 3; Reply Br. at 4. Sandlin served copies of his pleadings on JK Harris at its registered agent and/or corporate address. Further, JK Harris admits that it "cannot dispute that Sandlin's counsel certified that he mailed copies of pleadings filed pursuant to the certificate of service attached to them." Reply Br. at 4.

Rather, JK Harris claims that "[t]here is no evidence of notice from the trial court in the CCS giving notice to JK Harris of any of the substantive court proceedings or rulings." Appellant's Br. at 20. Harris **only** alleges it was not given notice of: 1) the November 2, 2009 hearing on Sandlin's motion for class certification,[4] 2) the hearing on the amended order approving class notice and directing class counsel to distribute notice to the class,[5] 3) the hearing

---

4. It is not clear from the record whether this hearing was actually held.

5. An amended order was issued on December 7, 2009, which indicates that it was distributed to JK Harris, but there is not an accompanying docket entry stating that JK Harris was served with the order. But on the record before us, it does not appear that there was a

on the motion for award of damages and the final fairness hearing, and 4) the January 25, 2010 hearing on the contempt citation and writ of attachment.[6] Reply Br. at 4.

Again, JK Harris does not dispute service of Sandlin's pleadings in this cause. Moreover, all of the court's notices and orders indicated that they were distributed to JK Harris at its registered agent's address, yet the CCS contains entries for service on the parties only on the following notices and orders: 1) the November 17, 2009 order setting the December 28, 2009 hearing for the purpose of identifying members of the plaintiff class, 2) the December 29, 2009 order on the rule to show cause, and 3) the January 25, 2010 Contempt Citation and Writ of Attachment. Tr. pp. 3–5.

But the full and final answer to JK Harris's claims about inadequate or nonexistent notice of these hearings is that no notice was required. Because JK Harris failed to file an appearance or answer to Sandlin's complaint, the trial court was not required to serve its subsequent notices and orders on JK Harris. *See* Trial Rule 5(A) ("No service need be made on parties in default for failure to appear . . ."). We note that despite proper service of process of Sandlin's complaint, JK Harris apparently concluded that it was not worth its time and effort to respond in any manner until its Indiana offices had been padlocked by the Marion Superior Court.

▋▋ Were we to also address JK Harris's argument under Trial Rule 60(B)(8), we would conclude that JK Harris cannot establish extraordinary circumstances war-

ranting relief under that rule. "Trial Rule 60(B)(8) allows the trial court to set aside a judgment within a reasonable time for any reason justifying relief 'other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).'" *Brimhall v. Brewster,* 864 N.E.2d 1148, 1153 (Ind.Ct.App.2007), *trans. denied* (quoting T.R. 60(B)(8)). The trial court's residual powers under subsection (8) may only be invoked upon a showing of exceptional circumstances justifying extraordinary relief. *Id.* Trial Rule 60(B)(8) has been distinguished on the following grounds:

> [Trial Rule] 60(B)(8) is an omnibus provision which gives broad equitable power to the trial court in the exercise of its discretion and imposes a time limit based only on reasonableness. Nevertheless, under T.R. 60(B)(8), the party seeking relief from the judgment must show that its failure to act was not merely due to an omission involving the mistake, surprise or excusable neglect. Rather some extraordinary circumstances must be demonstrated affirmatively. This circumstance must be other than those circumstances enumerated in the preceding subsections of T.R. 60(B).

*Id.* (quoting *Ind. Ins. Co. v. Ins. Co. of N. Am.,* 734 N.E.2d 276, 279–80 (Ind.Ct.App. 2000), *trans. denied* (internal quotation omitted)).

JK Harris's arguments in this regard show only that it consciously ignored the Marion Superior Court for approximately five and one-half months and then hired able counsel to attempt to remove it from the deep procedural and substantive hole of its own making. Any "extraordinary circumstances" it might and does allege to

---

hearing prior to issuance of the amended order.

**6.** Contrary to JK Harris's assertion, the record does establish that JK Harris received notice of the order setting the January 25,

2010 rule to show cause hearing. *See* Tr. p. 23; Appellant's App. pp. 150–51. But JK Harris failed to respond or appear at that hearing.

satisfy the requirements of Trial Rule 60(B)(8) are circumstances that would have been avoided with a timely responsive pleading after initial service of the complaint on JK Harris's registered agent in August, 2009. JK Harris simply ignored the pending litigation until its offices were closed by order of the trial court. These are not "extraordinary circumstances" within the meaning of Trial Rule 60(B)(8).

## II. The Binding Arbitration Provision

JK Harris also argues that the trial court should have dismissed the case and ordered the parties to binding arbitration because the contract between the parties provides that any dispute or controversy must be resolved in binding arbitration. Because it failed to file an answer to the complaint or participate in these proceedings until it was held in contempt and its offices were padlocked, JK Harris raised this argument for the first time in its motion to set aside default judgment.

 "Indiana and federal law recognize a strong policy of favoring enforcement of arbitration agreements." *Bielfeldt v. Nims*, 805 N.E.2d 415, 417 (Ind.Ct.App. 2004), *trans. denied.* Generally, a party seeking to compel arbitration must demonstrate that an enforceable arbitration agreement exists and that the disputed matter is the type of claim that is intended to be arbitrated under the agreement. *Precision Homes of Indiana, Inc. v. Pickford*, 844 N.E.2d 126, 130 (Ind.Ct.App. 2006), *trans. denied.* Once the court is satisfied that the parties contracted to submit their dispute to arbitration, the court

is required by statute to compel arbitration. *Roddie v. N. Am. Manufactured Homes, Inc.*, 851 N.E.2d 1281, 1284 (Ind. Ct.App.2006) (citation omitted).

 Even where a written agreement to submit a dispute to arbitration is valid and enforceable, "the right to require such arbitration may be waived by the parties." *Tamko Roofing Products, Inc. v. Dilloway*, 865 N.E.2d 1074, 1078 (Ind.Ct. App.2007) (citing *Safety Nat'l Cas. Co. v. Cinergy Corp.*, 829 N.E.2d 986, 1004 (Ind. Ct.App.2005), *trans. denied*).

> Such a waiver need not be in express terms and may be implied by the acts, omissions or conduct of the parties. Whether a party has waived the right to arbitration depends primarily upon whether that party has acted inconsistently with its right to arbitrate. Waiver is a question of fact under the circumstances of each case. "In determining if waiver has occurred, courts look at a variety of factors, including the timing of the arbitration request, if dispositive motions have been filed, and/or if a litigant is unfairly manipulating the judicial system by attempting to obtain a second bite at the apple due to an unfavorable ruling in another forum."

*Id.* (citations omitted).

 Despite the well-established rule that parties may waive their right to compel arbitration,[7] JK Harris argues that "[e]ven upon default, the trial court was required to comply with the four corners of the contract and enforce the terms of

---

7. *See e.g. Koors v. Steffen*, 916 N.E.2d 212, 217 (Ind.Ct.App.2009) (acknowledging that the right to arbitration may be waived); *Finlay Prop., Inc. v. Hoosier Contracting, LLC*, 802 N.E.2d 453, 455 (Ind.Ct.App.2003) (explaining that a party may waive its right to arbitration by subsequent actions that are inconsistent with that right); *Mid–America Surgery Center, L.L.C. v. Schooler*, 719 N.E.2d 1267, 1270 (Ind.Ct.App.1999); *Shahan v. Brinegar*, 181 Ind.App. 39, 44–45, 390 N.E.2d 1036, 1041 (1979) ("[W]e think the right to require such arbitration, as in the case of other contractual matters, may be waived by the parties where they fail to request arbitration and the issues sought to be determined by arbitration have been fully litigated before a court of competent jurisdiction.")

the contract confessed, including ordering arbitration[.]" Appellant's Br. at 12. In other words, JK Harris argues that the trial court was required to affirmatively protect its contractual interests even though JK Harris chose not to participate in the litigation. This argument is completely without merit in our adversarial system of justice. Under the circumstances and facts of this case, JK Harris waived its right to compel arbitration.

## III. Class Action Certification

JK Harris finally argues that the trial court abused its discretion when it denied its motion to set aside the trial court's class certification order. JK Harris contends that Sandlin's complaint did not include the allegations necessary to support a class action under Trial Rule 23, specifically, the requirements of numerosity, commonality, and predominance. Sandlin contends that the properly entered default judgment precludes review of the class certification.

 "The determination of whether an action is maintainable as a class action is 'committed to the sound discretion of the trial court.' " 11 *Assoc. Med. Networks, Ltd. v. Lewis*, 824 N.E.2d 679, 682 (Ind. 2005) (citing *Northern Ind. Public Service Co. v. Bolka*, 693 N.E.2d 613, 615 (Ind.Ct. App.1998), *trans. denied* ). We employ an abuse of discretion standard when we review a class certification. *Id.* "The trial court's certification determination will be affirmed if supported by substantial evidence." *Id.* A misinterpretation of law, however, will not justify affirmance under the abuse of discretion standard. *Id.* "The representative plaintiffs have the burden to show that all requirements for class certification have been met." *Rene ex rel. Rene v. Reed*, 726 N.E.2d 808, 816–17 (Ind. Ct.App.2000).

 Although a default judgment amounts to a confession of the complaint, Trial Rule 23 imposes an independent duty on the trial court to determine by order that the requirements of Rule 23 are met regardless of the defendant's admissions. *Core Funding Group, LLC v. Young*, 792 N.E.2d 547, 552 (Ind.Ct.App.2003), *trans. denied.*

A class may be certified only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." That requirement serves the important function of protecting absent class members whose rights might be affected by the class certification.

*Id.* (citations omitted).

Trial Rule 23 provides in pertinent part:

A) Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(B) Class actions maintainable. An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of:

(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of

conduct for the party opposing the class, or

(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

Ind. Trial Rule 23(A) & (B) (2011).

In *Core*, the defendant investment banking firm sent to plaintiff Young by facsimile an unsolicited advertisement for its services. Young filed a class action law suit against Core alleging that the transmission violated the Telephone Consumer Protection Act. The complaint was properly served on Core, who failed to appear or answer the complaint. Core did eventually file a motion for continuance stating that it needed time to retain an attorney, and the continuance was granted. Young then moved for default judgment on behalf of all members of the putative class. Core did not respond to the motion and failed to attend the class certification hearing. On the date of that hearing, the trial court entered orders certifying the class, entering default judgment against Core, and setting a date for the damages hearing.

On the date of the damages hearing, Core's counsel entered an appearance and filed motions to set aside the default judgment and to reconsider the class certification. The court initially set aside the default judgment, but then reinstated it on Young's motion after Core failed to comply with an order to produce information concerning the class. The court denied Core's motion to reconsider the class certification.

On appeal, Core argued that default judgment does not preclude appellate review of the class certification issue. Specifically, although the trial court "determined by order" that the requirements to Trial Rule 23 had been satisfied, Core asserted that the required "rigorous analysis" was not performed "apparently on the ground [that] Core did not appear at the class certification hearing to oppose Young's motion." *Id.* at 552.

Our court rejected Core's argument and stated: "We decline to adopt Core's apparent premise that a trial court cannot conduct a sufficiently 'rigorous' analysis of the propriety of a class action without participation by the defendant. Under Core's rationale, a defendant could prevent any class action from ever going forward merely by failing to participate in the class certification phase of the litigation." *Id.*

Young's complaint included the allegations required under Trial Rule 23 to support a class action. Specifically,

Young's complaint alleged, among other things, a violation of the TCPA and it defined the class as "all persons or entities in the United States who received facsimile transmissions from Core Funding" that contained advertising during the two years before the complaint was filed. It alleged at least forty people had received such faxes, so it was impracticable to join all the individual class members. It alleged common questions

of law and fact that predominated over any questions affecting individual class members. It alleged Young's claims were typical of the class claims and that Young would protect the interests of the class.

*Id.* (record citation omitted). We therefore concluded that the "trial court's analysis of the class certification question was as thorough as it could be without Core's participation." *Id.* Accordingly, we held that Core's "challenge to the class certification is [ ] foreclosed by the default judgment against it." *Id.* at 552–53.

 The facts of this case are remarkably similar to those in *Core*. In his August 19, 2009 complaint, Sandlin alleged deceptive advertising and unjust enrichment as class claims and requested that the trial court certify the matter as a class action. Sandlin initially defined the class as:

a. All persons located in Indiana

b. who responded to advertising from JK Harris; and

c. who contracted with JK Harris for tax resolution services that included the preparation and negotiation of an offer in compromise, paid fees to JK Harris, but did not receive the tax relief sought and did not receive a refund or other form of settlement; and on or after a date six (6) years prior to this filing.

Appellant's App. p. 13. Sandlin alleged that the class was "so numerous that joinder of all members is impractical." *Id.* Finally, Sandlin claimed that "[t]here are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members." *Id.* The proposed class for the unjust enrichment claim was similarly defined. *Id.* at 16.

On October 6, 2009, Sandlin filed his motion for class certification, together with forty-one pages of documentation in support of certification of the proposed class.

These documents included pleadings and orders certifying a similar class in South Carolina. In that motion Sandlin requested certification of a class consisting of:

a. All natural persons located in Indiana.

b. who contracted with JK Harris for tax resolution services that included the preparation and negotiation of an offer in compromise.

c. paid fees to JK Harris,

d. did not receive the tax relief sought,

e. did not receive a refund or other form of settlement; and

f. did so on or after a date six (6) years prior to this filing.

Appellant's App. p. 51. Sandlin alleged that he had "good cause to believe that the class is so numerous that joinder of all members is impractical." *Id.* at 53. And in support of that claim, he noted that the Indianapolis television market has over one million viewers who possibly saw JK Harris's advertisements, and that similar class action litigation in South Carolina had a class size of over 50,000 people.

Sandlin further alleged that the "question of law common to Mr. Sandlin and all putative class members is whether JK Harris violated [the deceptive advertising statute] by disseminating to the public an advertisement that was false, misleading, and deceptive" and whether JK Harris "was unjustly enriched by collecting money for services it did not provide." *Id.* at 54. Further, he claimed that "these common questions predominate over any individual facts and operate around a common fact of law." *Id.* Sandlin asserted that his claims are not in conflict with the class as a whole and the shared claims are nearly identical. Sandlin alleged that he would fairly and adequately protect the interests of the class and is committed "to vigorously litigating this matter." *Id.* at 55. Sand-

lin also claimed that a class action is superior to other methods "for the fair and efficient adjudication of the issues presented." *Id.* To support these allegations, Sandlin submitted a press release concerning a consent judgment several other states entered into with JK Harris concerning its deceptive advertising practices and the final judgment order in the South Carolina class action litigation.

On November 4, 2009, while his motion for class certification was pending, Sandlin filed an application for default judgment. On November 10, 2009, the trial court issued an order granting the application for default judgment and the motion for class certification. In its order, the trial court considered the numerosity, commonality, and typicality requirements as required by Trial Rule 23. The court also determined that Sandlin would adequately represent the interests of the class. But it is not entirely clear from the order whether the trial court considered and analyzed the predominance requirement described in Rule 23(B)(3). The trial court named Sandlin as the Plaintiff Class representative and concluded that the

> "Plaintiff Class shall be certified pursuant to T.R. 23(A), (B)(1), (B)(2), and (B)(3), composed of the following persons:
>
> a. All natural persons located in Indiana,
>
> b. who contracted with JK Harris for tax resolution services that included the preparation and negotiation of an offer in compromise,
>
> c. paid fees to JK Harris,
>
> d. did not receive the tax relief sought,

> e. did not receive a refund or other form of settlement, and
>
> f. did so on or after a date six (6) years prior to this filing."

*Id.* at 106, 110–11. Pursuant to Rule 23(D), the court retained "jurisdiction to modify the definition of the Plaintiff Class to create subclasses or for such other purpose as may be appropriate based upon the completion of discovery on the merits of Plaintiff's claims." *Id.* at 111.

Sandlin attempted to conduct discovery to identify individual class members and determine damages by filing a motion for production of class list and fee for class notification. The trial court granted the motion, but JK Harris continued to fail to respond to any pleading or order filed in the litigation. The trial court also approved Sandlin's class notice, but Sandlin was unable to distribute the notice because JK Harris refused to participate in the litigation. Sandlin attempted to compel JK Harris's participation by filing a motion for rule to show cause. Although it received notice of the show cause hearing, JK Harris failed to appear.[8]

JK Harris's argument that we should set aside the class certification because the trial court failed to conduct the "rigorous analysis" required by Trial Rule 23 is unavailing given its failure to participate in the litigation. *See Core,* 792 N.E.2d at 552. Like the plaintiff in *Core,* Sandlin's complaint included the allegations necessary to support a class action under Trial Rule 23. As evidenced by its order certifying the Plaintiff Class, the trial court's analysis of the class certification question

---

8. The trial court's order setting the January 25, 2010 hearing on the Rule to Show cause was served on JK Harris at its 96th Street office address by the Hamilton County Sheriff, who delivered "a copy to the Defendant personally." Appellant's App. pp. 149–50.

On January 11, 2010, the order was also served by the Berkley County Sheriff on Heidi Benton, JK Harris's Vice–President of Legal Affairs, at its corporate offices in Goose Creek, South Carolina. Tr. p. 23.

was as thorough as it could be without JK Harris's participation.

The trial court ultimately secured JK Harris's appearance and participation in this cause by padlocking its six Indiana offices. With JK Harris's cooperation and compliance with the court's future discovery orders, the trial court should finally have the information necessary to properly define the Plaintiff Class. *See Independence Hill Conservancy Dist. v. Sterley,* 666 N.E.2d 978, 981 (Ind.Ct.App.1996) (stating "[a] class definition must be specific enough for the court to determine whether or not an individual is a class member."). Trial Rule 23(C)(1) allows the trial court to "redefine a class in order to sustain the lawsuit." *See id.* at 982. We therefore remand this case to the trial court to hold an evidentiary hearing pursuant to Rule 23(C)(1), which will allow the court to redefine the Plaintiff Class with more specificity.

### Conclusion

JK Harris waived its argument that the trial court abused its discretion when it denied its Trial Rule 60(B) motion for reasons of excusable neglect and equity because those arguments were not raised in the trial court. JK Harris also waived its right to compel arbitration. Because JK Harris defaulted and failed to respond to any of Sandlin's pleadings concerning the class certification, the trial court did not abuse its discretion when it failed to set aside the class certification. Because of JK Harris's conscious decision not to participate for more than five and one-half months, a more precise identity of the relevant class may well require additional hearings that consider the results of further discovery on JK Harris. We therefore remand this case to the trial court to hold an evidentiary hearing pursuant to Rule 23(C)(1), in order to redefine the Plaintiff Class with more specificity.

Affirmed and remanded for proceedings consistent with this opinion.

BAKER, J., and NAJAM, J., concur.