

**FILED**

Dec 31 2024, 8:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



I N T H E

# Court of Appeals of Indiana

Bruce A. Adams,

*Appellant-Defendant,*

v.

Freddy A. Lazaro,

*Appellee-Plaintiff.*

---

December 31, 2024

Court of Appeals Case No.
24A-PL-1165

Appeal from the
Marion Superior Court

The Honorable
John M.T. Chavis, II, Judge

Trial Court Cause No.
49D05-1805-PL-21105

**Baker, Senior Judge.**

# Statement of the Case

[1] This case illustrates the importance of signed contracts when parties rent or sell property. Freddy Lazaro thought he was buying a house from Bruce Adams on a rent-to-own basis. Adams disagreed, conceding that Lazaro was a tenant with an unwritten lease but arguing that they had never signed a purchase agreement.

[2] The parties counter-sued. Lazaro claimed breach of contract, while Adams requested eviction and payment of damages. The trial court allowed Lazaro to amend his complaint to raise an equitable claim of part performance and entered judgment for Lazaro on that basis. Adams appeals. Concluding Adams has not shown grounds for reversal, we affirm.

# Facts and Procedural History

[3] Adams owned a house in Indianapolis. He and Lazaro were introduced by Lazaro's father-in-law when Lazaro was looking for a house. Adams and Lazaro reached an agreement. Lazaro, who had never bought a house, later claimed he and Adams had a rent-to-own arrangement, with "$5,000.00 down and 36 months of $500.00 payments" that would result in him owning the

house free and clear. Tr. Vol. 2, p. 16. Lazaro also stated he understood the purchase price to be $23,000.00.

[4] A receipt signed by both parties, dated August 28, 2013, reveals Adams "Received five thousand dollars cash per contract on property at 3112 S. Lockburn St." Tr. Vol. 3, p. 6. The receipt identified Adams as the "seller" and Lazaro as the "buyer." *Id.*

[5] A week after the parties executed the receipt, Adams gave Lazaro one page of a document titled "Lease Option Contract." *Id.* at 8. Among other provisions, the document describes itself as a "LEASE AGREEMENT TO PURCHASE REAL ESTATE" and sets forth "Rent to Own" terms. *Id.* It also provides the "Tenant/Buyer" would pay $5,000 at the time of possession. *Id.* Finally, the document states all rent payments shall be applied to the purchase price of the property. Neither party signed this document.

[6] Adams later produced what appears to be a more complete version of the document, unsigned, which specifies: (1) the "Tenant/Buyer" is responsible for paying all utility bills; and (2) the "Tenant/Buyer" shall maintain home insurance coverage. *Id.* at 83. Adams claimed he sent the full document to Lazaro for review and signature, but Lazaro failed to sign. Lazaro insisted that he received only the first page of the document.

[7] In any event, Lazaro moved into the house in January 2014, after making repairs. He continued to make improvements to the house while he lived there, including replacing a set of stairs, replacing the subfloor in the living room,

installing new countertops and appliances in the kitchen, painting the house's exterior, installing a new toilet and bathtub, and replacing the water heater. Lazaro paid $10,000 for the materials to renovate the house. He also paid all utilities except the sewer bill, later claiming he never received the bills from Adams or the utility company.

[8] Over the next several years, Lazaro gave Adams forty-seven payments of $500, for a total of $23,500, in the form of money orders he delivered in person. Lazaro believed that the $500 payments included property taxes.

[9] In March 2017, Adams delivered a letter to Lazaro complaining that Lazaro had not paid sewer bills or property tax bills. He also claimed Lazaro should have paid for "Homeowners Insurance" on the property. *Id.* at 77. Adams described Lazaro's nonpayment as a "violation of the tenancy agreement." *Id.* To make up for the alleged nonpayment, Adams told Lazaro to choose between paying him a lump sum of $6,030.29 or a monthly sum for eighteen months. Lazaro agreed to pay Adams.

[10] In July 2017, Adams sent Lazaro a notice of eviction for unpaid rent and failure to obtain insurance. Lazaro did not relinquish control over the property, but he stopped making payments in February 2018. Adams sent Lazaro a second notice of eviction in April 2018.

[11] In May 2018, Lazaro filed a civil complaint against Adams, arguing Adams had breached their agreement and asking the court to direct Adams to convey the property to him. Adams filed an answer and a "Counter-Claim and Cross-

Claim." Appellant's App. Vol. 2, p. 36. Adams argued: (1) the parties never executed a written sale agreement to transfer ownership; (2) Lazaro failed to pay utility bills, property taxes, and related expenses, causing Adams to incur damages; and (3) Lazaro should be evicted from the property for breaching the lease agreement.

[12] In November 2023, the trial court presided over a bench trial. Adams moved for judgment on the pleadings twice: once at the beginning of the trial, and again after Lazaro had finished his case-in-chief. Adams argued Lazaro had failed to prove there was a valid written contract. In response, Lazaro moved "to allow [Lazaro's] pleadings to fit the evidence in this case." Tr. Vol. 2, p. 105. Lazaro wanted to add an equitable claim estopping Adams "from asserting that there wasn't an agreement [to sell the house,]" noting that the parties acted as if there was a written contract. *Id.* The court took the motions under advisement, pending the filing of post-hearing briefs by the parties.

[13] In February 2024, the trial court issued findings of fact and conclusions thereon. The court determined Lazaro's claim for breach of contract failed because there was no written, signed contract. But the court further determined the parties had orally agreed to sell the house, and the agreement was enforceable under the equitable doctrine of part performance. The court ordered Adams to convey the property to Lazaro. Finally, the court concluded Lazaro owed Adams $1,490.93 for unpaid property taxes.

Adams moved to correct error.  The trial court denied Adams' motion, and this appeal followed.

## Discussion and Decision

Adams appeals following the denial of his motion to correct error.  In this circumstance, we neither reweigh the evidence nor judge the credibility of the witnesses.  *In re Paternity of B.N.C.*, 822 N.E.2d 616, 619 (Ind. Ct. App. 2005). In general, we review the denial of a motion to correct error for an abuse of discretion.  *Id.*  But Lazaro has not filed an Appellee's Brief.  "When the appellee fails to file a brief on appeal, we may reverse the trial court's decision if the appellant makes a prima facie showing of reversible error."  *Walking With Jesus Ministries v. Alexander*, 240 N.E.3d 183, 185 (Ind. Ct. App. 2024).  "Prima facie error in this context means 'at first sight, on first appearance, or on the face of it.'"  *Inspire Outdoor Living v. Norris*, 193 N.E.3d 428, 430 (Ind. Ct. App. 2022) (quoting *Salyer v. Wash. Regular Baptist Church Cemetery*, 141 N.E.3d 384, 386 (Ind. 2020)).  "This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee."  *Bixler v. Delano*, 185 N.E.3d 875, 878 (Ind. Ct. App. 2022).

Adams first argues the trial court should not have allowed Lazaro to amend his complaint mid-trial, over five years after filing the original complaint, to add an equitable claim.  He says he had no notice of the amendment and was prejudiced by it.

[17] During trial, when the court asked Adams to respond to Lazaro's motion to amend the pleadings, Adams' counsel responded as follows:

> Um, regarding for the motion for the pleadings to conform to the evidence, um, there is no equitable claim to transfer real estate. *So, I have no objection to that.* Regarding the equities, um, he hasn't paid anything in over five years. The – the law would be that he would become a tenant at will, um, under the landlord tenant statutes. And so, Mr. Adams would still be entitled to damages under that scenario. The arrangement between the parties was that he was paying $500.00 to live there. The equities is that he can't – he's been living somewhere for over five and a half years where Mr. Adams pays property taxes, pays insurance. Um, and so, I guess we'll just reserve the right to – to, you know, submit our findings of facts and conclusions of law on all these issues. But – I – I do want the motion for judgment on the, on the pleadings to . . . to be at issue as well.

Tr. Vol. 2, pp. 106-07 (emphasis added). Not only did Adams fail to object on grounds of lack of notice or prejudice, but also he affirmatively told the court he had no objection to Lazaro's motion. As a result, he has waived those arguments on appeal. *See JK Harris & Co., LLC v. Sandlin*, 942 N.E.2d 875, 882 (Ind. Ct. App. 2011) (failure to present claim to trial court resulted in waiver on appeal), *trans. denied*.

[18] We turn to the merits of the trial court's ruling. In general, a person may not bring suit to enforce a contract for the sale of land unless the contract "or a memorandum, or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought[.]" Ind. Code § 32-21-1-1(a) (2002). "The statute is intended

to preclude fraudulent claims which would probably arise when one person's word is pitted against another's and which would open wide those ubiquitous flood-gates of litigation." *Marathon Oil Co. v. Collins*, 744 N.E.2d 474, 478 (Ind. Ct. App. 2001) (quoting *Perkins v. Owens*, 721 N.E.2d 289, 292 (Ind. Ct. App. 1999) (citations and internal quotation marks omitted)).

[19] Even so, oral contracts for the conveyance of land are voidable, not void. *Id.* An oral agreement to sell land may be enforced under the doctrine of part performance. *Summerlot v. Summerlot*, 408 N.E.2d 820, 828 (Ind. Ct. App. 1980). "Where one party to an oral contract in reliance on that contract has performed his part of the agreement to such an extent that repudiation of the contract would lead to an unjust or fraudulent result, equity will disregard the requirement of a writing and enforce the oral agreement." *Id.*

[20] The doctrine of part performance applies when a party proves a combination of the following acts: "1) payment of the purchase price or a part thereof; 2) possession; and 3) lasting and valuable improvements on the land." *Spring Hill Devs. Inc. v. Arthur*, 879 N.E.2d 1095, 1104 (Ind. Ct. App. 2008). "'[W]hether there was performance sufficient to invoke the doctrine is a question which requires the examination of the circumstances of each case.'" *Lux v. Schroeder*, 645 N.E.2d 1114, 1118 (Ind. Ct. App. 1995) (quoting *Dupont Feedmill Corp. v. Standard Supply Corp.*, 395 N.E.2d 808, 811 (Ind. Ct. App. 1979)), *trans. denied*.

[21] Lazaro paid Adams $5,000, "per contract[.]" Tr. Vol. 3. p. 6. Adams sent Lazaro one page of a form rent-to-own land contract. It appears that Lazaro

performed his side of the bargain as he understood it: he took possession of the house, which he retained throughout the pendency of the lawsuit, and he paid Adams $23,500 in installments, which he believed covered the rent, the purchase price and property taxes. In fact, that amount exceeded the agreed-upon purchase price. Lazaro, a first-time homebuyer, failed to pay the sewer bill, but Adams did not inform him of the bill until after Lazaro had lived in the house for several years. Lazaro paid all other utility bills. Finally, he made repairs to the house inconsistent with simply renting it, including replacing appliances and the water heater, installing a new staircase and flooring, and painting the exterior. Lazaro spent $10,000 on materials for these improvements. Thus, Lazaro took extensive actions in reliance on his oral agreement with Adams. The trial court did not err in determining the doctrine of part performance applies to these circumstances. *See Summerlot*, 408 N.E.2d at 829 (affirming trial court's order to transfer property under doctrine of part performance of oral agreement; tenant took possession of land, made payments, and implemented improvements consistent with parties' agreement). Adams has not met his burden of proving prima facie error.

## Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

Bradford, J., and Brown, J., concur.

ATTORNEY FOR APPELLANT

Steven P. Lammers
Mandel Rauch & Lammers, PC
Carmel, Indiana